**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                       :
ANNETTE CASATELLI,                     :
                                       :
          Plaintiff,                   :    Civil Action No.
                                       :    08-3662 (FLW)
                                       :
     v.                                :
                                       :    **OPINION**
COMMISSIONER OF SOCIAL                 :
SECURITY,                              :
                                       :
          Defendant.                   :
                                       :
_____:

**WOLFSON, United States District Judge**:

Plaintiff Annette Casatelli ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), Michael J. Astrue, denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). The general issue before this Court is whether Plaintiff is entitled to disability insurance benefits under sections 216(I) and 223 of the Social Security Act beginning on April 2, 2005, the onset date of her alleged disability. The specific issue is whether the Administrative Law Judge ("ALJ")'s determination, at Step Five of the sequential process, that Plaintiff could perform three types of jobs is supported by substantial evidence. After reviewing the

administrative record, the Court reverses and remands this case to the ALJ for further administrative review consistent with this Opinion.

## I.   STATEMENT OF FACTS

Plaintiff was born in 1964.  She graduated from high school and received additional education in computer programming and computerized medical coding.  Administrative Record ("AR") at 74-75.  Plaintiff has worked in McDonald's; at the Champlin Law Firm processing paperwork; and at a Holiday Inn scheduling appointments.  Her position at the Holiday Inn was her last employment.  Id. at 123.  Plaintiff is married with one child, age 5.

### A.   Mental Impairments

Plaintiff stated that she was disabled as of April 2, 2005, and ended her job as a reservations clerk in September 2004 because of depression from caring for her ill mother and experiencing a miscarriage.   Id. at 71, 120, 234.  Due to complaints of depression, Plaintiff saw Dr. Chunilal Kansagra, M.D., for a psychiatric evaluation on October 28, 2005.  Id. at 120.  The examination revealed that she was oriented in all spheres, her memory was intact, and that she was coherent.  Id. at 121.  Her mood and affect were tense, but she denied suicidal or homicidal ideation, and auditory or visual hallucinations.  Id.  Dr. Kansagra diagnosed her with major depression disorder, single episode, hypertension, and assessed her Global Assessment of Functioning at

2

65.[1]

In connection with her social security disability application, Dr. Jack Baharlias, Ed.D., consultatively examined Plaintiff on February 28, 2006.  _Id._ at 122.  During the examination, Dr. Baharlias noted that Plaintiff indicated that she was not a special education student and that she has no learning disability.  _Id._ Plaintiff also indicated that she did not consider herself to be a chronically depressed person, but was depressed due to the circumstances of taking care of her mother.  _Id._ at 123.

The examination revealed that Plaintiff was able to count backwards from 20 to 1 and recite the alphabet.  On a digit span subtest, Plaintiff was also able to remember six numbers forward and four numbers backward.  _Id._  However, she was not able to do three step mathematical activity, serial sevens, nor could she spell "world" backwards.  _Id._  Dr. Baharlias ultimately concluded that Plaintiff may have some type of learning disability and that she had some concentration difficulties.  _Id._  Dr. Baharlias also concurred with Dr. Kansagra's diagnosis and determined that due to elder care and the miscarriage, Plaintiff "obviously has caregiver syndrom."  _Id._

---

[1]

The Court takes judicial notice that an individual with a GAF score of 65 has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions well and has some meaningful interpersonal relationships.  See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision, Washington, D.C., American Psychiatric Assoc. 2000.

On April 25, 2006, Dr. Zenaida Mata, a state agency non-examining physician, completed a Psychiatric Review Technique Form. Id. at 125-35.  Based upon a review of all the evidence in the file, Dr. Mata opined that Plaintiff had mild limitations in activities of daily living and social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  Id. at 135.  He concluded that Plaintiff had a severe impairment which did not meet the Listings and therefore, an RFC assessment was necessary.  Id. at 125.

In Dr. Mata's mental RFC assessment, he determined that Plaintiff's ability to understand, remember and carry out very short and simple instructions was not significantly limited.  Id. at 139.  Plaintiff's ability to understand and remember detailed instructions was moderately limited, so was her ability to carry out detailed instructions, and maintain attention and concentration for extended periods.  Id.  Her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances was also moderately limited.  Id.

In the Functional Capacity Assessment section, Dr. Mata concluded that Plaintiff was "best suited for job tasks which do not require any mental versatility." Id. at 141.  While cognitive test showed that Plaintiff could not carry out a 3 step math operation, she was oriented and equipped for simpler 2/3 step directions.  In a job setting, Dr. Mata recommended that Plaintiff

4

would be able to "relate in an appropriate manner to others and make social adaptations on a job," and that despite "some limitations in stress tolerance and concentration, she preserves the RFC to adapt, relate, and respond productively to slower paced jobs." Id.

On January 6, 2008, Plaintiff was examined by Dr. David Wolfe, M.D., at the request of the Commissioner. Id. at 207. Dr. Wolfe found that Plaintiff's ability to understand, remember and carry out simple instructions was moderately limited, but was markedly limited with respect to her ability to understand, remember, and carry out complex instructions. Id. at 210. Dr. Wolfe further found that Plaintiff appeared to be suffering from major depression, possibly related to three miscarriages. Id. at 209. Plaintiff's long term mental health prognosis was poor to fair, depending on whether she sough treatment. Id. Moreover, Plaintiff was found to be capable of handling her own finances.

### B. Physical Impairments

The record reveals that Plaintiff was treated on multiple occasions by Dr. Shahid Farooqui, M.D., for hypertension, reflux symptoms, and right shoulder pain. Id. at 147-165. Examination findings were mostly negative, including normal range of motion, strength and tone. Id. Plaintiff saw Dr. Allegra, M.D., on August 28, 2007, for further evaluation of shoulder pain. Id. at 184. Dr. Allegra diagnosed Plaintiff with right shoulder rotator cuff

5

tendinitis, bursitis, and hypertension.   In that regard, examination revealed that Plaintiff had a decreased abduction in her right shoulder with crepitus and limitation at 90 degrees, as well as decreased external rotation.  Id.  Plaintiff was instructed to perform range of motion exercises.  Id.  Dr. Allegra referred Plaintiff to Dr. Natalio Damien, M.D., for an MRI of her right shoulder on November 14, 2007.  Id. at 204.   The MRI revealed moderate tendinopathy/tendinitis of the supraspinatus tendon with mild bursitis.  Id.  There was no evidence of a rotator cuff tear. Id.

   C.   **Vocational Expert's Testimony**

   A vocation expert, Mitchell Schmidt, testified before the ALJ at Plaintiff's disability hearing.  The expert indicated that the claimant's past relevant work as a telemarketing manager was light ane skilled; her past work as a telephone solicitor was sedentary and semi-skilled; her past work as an office worker was light and unskilled; and her past work as a secretary is sedentary and skilled  Id. at 17.  The expert was asked to assume an individual with Plaintiff's age, education and past relevant work and to assume that such an individual had the exertional residual functional capacity to perform sedentary work; to understand and remember simple, routine instructions and carry out repetitive tasks; to make simple work related decisions and use common sense; and was able to deal with minor or a few work changes in a routine

6

work setting; and is limited to occasional interaction with supervisors and co-workers. The individual also could not perform overhead reaching. In light of this hypothetical, the expert opined that such individual could not perform any of Plaintiff's past work but could perform the sedentary, unskilled jobs of "addresser," "document preparer," and "eyeglasses assembler/truer."

### D.   ALJ's Findings

The ALJ made the following findings:

1.   Plaintiff meets the insured status requirements of the SSA through March 31, 2009;

2.   Plaintiff has not engaged in substantial gainful activity since April 2, 2005, the alleged onset date;

3.   Plaintiff has the following severe impairments: a history of right rotator cuff tendonitis and depression. The Plaintiff also alleges the following non-severe impairment: a history of gastritis and knee pain. Plaintiff's medically determinable mental impairment has resulted in the following limitations in four broad functional areas: Plaintiff has mild limitation affecting activities of daily living; moderate limitations affecting social functioning; and in concentration, persistence and pace. She has experienced no episodes of decompensation;

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

5.   Plaintiff has the residual and exertional functional capacity to perform a range of sedentary work. She has the following additional nonexertional limitations: Plaintiff is unable to perform overhead reaching; she is only able to understand and remember simple, routine instructions and carry out repetitive tasks; to make simple work related decisions and use common sense; and is able to deal with minor or a few work changes in a routine work setting; is limited to occasional

7

interaction with supervisors, coworkers and the general public;

6.   Plaintiff is unable to perform her past relevant work;

7.   Plaintiff can perform the sedentary, unskilled jobs as outlined by the vocational expert, including: "addresser;" "document preparer;" "and eyeglass assembler/truer." These jobs exist in significant numbers both regionally and nationally. The vocational expert's testimony was consistent with SSR 00-4P;

8.   Plaintiff has not been under a disability, as defined in the SSA.

<u>Id.</u> at p. 18-19.


## II.   DISCUSSION

### A.   Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); <u>see</u> <u>Matthews v. Apfel</u>, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); <u>see</u> <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978), the standard is

8

"highly deferential." <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the factfinder." <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. <u>See</u> <u>Simmonds v. Heckler</u>, 807 F.2d 54, 58 (3d Cir. 1986).

**B.  Standard for Entitlement of Benefits**

Disability insurance benefits may not be paid under the Social Security Act ("SSA") unless Plaintiff first meets the statutory insured status requirements. <u>See</u> 42 U.S.C. § 423©.  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); <u>see</u> <u>Plummer</u>, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

The SSA establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520©; see Bowen, 482 U.S. at 146-7 n.5.  Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id.  A claimant who does not have a severe impairment is not disabled.  20 C.F.R. § 404.1520©; see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R.

Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. §
404.1520(a)(4)(iii).  If the claimant demonstrates that her
impairments are equal in severity to or meet those on the
Impairment List, the claimant has satisfied her burden of proof and
is automatically entitled to benefits. <u>See</u> 20 C.F.R. §
404.1520(d); <u>see</u> <u>also</u> <u>Bowen</u>, 482 U.S. at 146-47 n.5.  If the
specific impairment is not listed, the ALJ will consider the
impairment most like the impairment to decide whether the
impairment is medically equivalent. <u>See</u> 20 C.F.R. § 404.1526(a).
If there is more than one impairment, the ALJ then must consider
whether the combination of impairments is equal to any listed
impairment. <u>Id.</u> An impairment or combination of impairments is
basically equivalent to a listed impairment if there are medical
findings equal in severity to all the criteria for the one most
similar. <u>Williams</u>, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the
criteria set forth in the Impairment List, step three is not
satisfied, and the claimant must prove at step four whether she
retains the residual functional capacity to perform her past
relevant work ("PRW"). 20 C.F.R. § 404.1520(d); <u>Bowen</u>, 482 U.S. at
141.  If the claimant is able to perform her previous work, the
claimant is determined to not be disabled.  20 C.F.R. §§
404.1520(e), 416.920(e); <u>Bowen</u>, 482 U.S. at 141-42.  The claimant
bears the burden of demonstrating an inability to return to the

past relevant work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  Id.

### D.  Plaintiff's Arguments on Appeal

On this appeal, Plaintiff contends that the ALJ's decision that Plaintiff could perform the work of an eyeglass assembler/truer, an addresser, or a document preparer is not supported by substantial evidence.  To support her contention, Plaintiff relies on the DOT's descriptions of these jobs and argues that the listed requirements extend well beyond her abilities. Plaintiff further contends that the ALJ failed to resolve these inconsistencies as required by SSR 00-4P. Below, the Court will address each of Plaintiff's contentions.

### E.  Step Five: Whether Plaintiff is Able to Perform Work Available in the National Economy

At Step Five of sequential analysis, Plaintiff maintains that the ALJ's findings that Plaintiff could perform three distinct jobs

conflict with her actual capabilities.  In particular, Plaintiff argues that DOT describes the occupation of eyeglass assembler/truer as requiring a strength level of "light," (DOT Section 718.684-026) however, because the ALJ found that Plaintiff could only perform sedentary work, his decision is contrary to his finding.  Furthermore, because the DOT descriptions of the occupations of addresser and document preparer describe each job as requiring "significant reaching" (DOT Section 209.581-01; DOT Section 249.587-01), and because the ALJ found that Plaintiff is unable to perform overhead reaching, the ALJ's decision that she could preform these two jobs is also erroneous.  In addition, Plaintiff contends that the record does not support the conclusion that she possesses the mathematical reasoning or language skills required to perform these jobs as she is unable to perform three-step mathematical calculations, perform serial sevens, or spell the word "world" backwards.

At Step Five of the sequential analysis, once a claimant satisfies her initial burden of proof by showing that she is unable to return to her PRW the burden shifts to the Commissioner to prove that there is some other substantial gainful employment she is able to perform.  Kangas v. Bowen, 823 F.2d 774, 777 (3d Cir. 1987). A vocational expert ("VE") may provide reliable evidence regarding the existence of jobs in the national economy and whether a particular individual may be able to perform any of these jobs

given her functional limitations. 20 C.F.R. § 404.1566. A VE's testimony may constitute substantial evidence to support the ALJ's determination that there were a significant number of jobs in the national economy that Plaintiff could perform. Rutherford v. Barnhart, 399 F.3d 546, 558 (3d Cir. 2005).

In the context of relying on vocational expert testimony, an ALJ is required to ask the expert whether any possible conflict exists between his/her testimony and the DOT, and that if the testimony does appear to conflict with the DOT, the judge must elicit a reasonable explanation for the apparent conflict. Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002)(citing SSR 00-4p).

Here, at the outset, Defendant concedes Plaintiff is unable to perform the job of eyeglass assembler/truer. Indeed, the ALJ's findings with regard to that job were based on mistaken testimony by the VE, which the ALJ failed to address or to explain. Specifically, DOT Section 713.684-026 provides that an eyeglass assembler is classified at strength level light. However, the VE testified that this type of employment is sedentary and unskilled in nature. See AR at 17. The ALJ agreed with the VE's recommendation without explaining the apparent discrepancy between the DOT's description and the VE's testimony of the requirements of an eyeglasses assembler, particularly since the ALJ specifically indicated in his decision that Plaintiff could only do sedentary work. Absent such explanation, the ALJ's decision is not based

upon substantial evidence.

Nevertheless, Defendant submits that substantial evidence exists to support the ALJ's findings with regard to the remaining two occupations.  In that connection, Defendant argues that while the ALJ did not pose a hypothetical to the VE with respect to overhead reaching, such hypothetical is irrelevant because although both jobs require "significant reaching," neither job description suggests that overhead reaching is required.  As such, the performance of either job would not go beyond Plaintiff's physical abilities.  The Court disagrees.

According to the DOT, an addresser "addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing" and "may sort mailing." DOT Section 209.587-010. A document preparer: prepares documents such as brochures, pamphlets, and catalogs for microfilming, using paper cutter or razor knife; reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine; stamps standard symbols or inserts instruction cards between pages to notify [a camera operator] of special handling, such as manual repositioning during microfilming; prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code to identify material; inserts material to

be filmed in document folder and files folder for processing. DOT Section 249.587-018.

Nothing in the ALJ's decision addresses how Plaintiff's physical limitation - inability to reach overhead- affects the vocational analysis.  While there is an appreciable difference between significant reaching and overhead reaching, the ALJ, without a proper explanation, concludes that Plaintiff can perform the aforementioned tasks.  Defendant again concedes that the ALJ erred by not including in the hypothetical posed to the VE an inability to perform overhead reaching, despite the ALJ's finding such a limitation in Plaintiff's RFC.  However, Defendant requests this Court to independently find that the DOT definitions of addresser and document preparer suggest that the jobs do not require overhead reaching, as opposed to other reaching.  The Court declines to make such inferential finding because the VE's testimony concerning the Plaintiff's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays her physical and mental impairments.  See Burns, 312 F.3d at 123.  "A hypothetical question posed to a vocational expert must reflect all of [] [Plaintiff's] impairments." Id.  As such, "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Id.

Since the ALJ failed to include Plaintiff's physical limitation - overhead reaching - in the hypothetical posed to the VE and failed to explain that the significant reaching required of the identified jobs does not specifically encompass overhead reaching, the ALJ's conclusions in this regard may not have been based upon substantial evidence.

Next, Plaintiff contends that the ALJ failed to ask the VE, or explain in his decision, how her learning disabilities would affect her ability to perform the job of an addresser or a document preparer.   Plaintiff asserts that she lacks the intellectual capacity and ability to perform the jobs of addresser or document preparer. Citing to the DOT Guide for Occupation Exploration ("GOE"), Plaintiff reasons that since an addresser is classified at mathematical development level one and language development level two, the record does not support the conclusion that she possesses these skills. To support her contention that she does not possess these skills, Plaintiff relies on medical testings that revealed her inability to perform three-step mathematical activity, serial sevens, or spell the word "world" backwards.   Moreover, Plaintiff insists that the document preparer job is even more complex and thus, unsupported by the record.

On the other hand, Defendant urges the Court to find that the record does not demonstrate that Plaintiff had any substantial concentration difficulties, and that Plaintiff's mental impairments

did not preclude her from performing tasks associated with an addresser or document preparer. Thus, Defendant argues, the ALJ's failure to include Plaintiff's learning disabilities in the hypothetical posed to the VE was harmless error. The Court disagrees. In reviewing his decision, the ALJ's hypothetical indeed did not include Plaintiff's inability to concentrate and her learning disabilities.[2] Moreover, the ALJ does not mention how Plaintiff, with these mental impairments, could perform the tasks of an addresser or document preparer. While Plaintiff may ultimately be found to have the mental capabilities to perform these jobs, the ALJ simply ignored the impact of Plaintiff's mental impairments. Without such discussion, the Court can not properly determine whether the ALJ's decision was based upon substantial evidence. See Burns, 312 F.3d at 129 ("An administrative law judge must evaluate all relevant evidence and explain his reasons for

---

[2]

Plaintiff argues that the ALJ did not consider the opinion of Dr. Mata, a state agency non-examining physician. Dr. Mata found that Plaintiff had moderate limitations affecting her ability to understand, remember and carry out detailed instructions; maintain attention and concentration; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances, complete a normal workday or workweek without interruptions from psychologically based symptoms. See AR at 14. While the ALJ mentioned and rejected Dr. Mata's diagnosis by stating that Dr. Mata's opinion was not consistent with the evidence of record, the Court cannot discern from the ALJ's decision the reasons why he discounted such findings. Particularly since the ALJ, at Step-Five of the sequential analysis, indicated that Plaintiff was only able to understand and remember simple routine instructions - these limitations are consistent with Dr. Mata's findings.

rejecting any such evidence").

**III. CONCLUSION**

For the reasons set forth above, the Court finds that the ALJ's decision was not supported by substantial evidence in the record. Accordingly, this case is reversed and remanded to the ALJ for further administrative review consistent with this Opinion.

An appropriate Order shall follow.

/s/  Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: August 31, 2009